IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| JUDICIAL WATCH, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) Civil Action No. 1:07CV01570 (RCL) |
| BUREAU OF LAND MANAGEMENT | ) |
| | ) |
| Defendant. | ) |
| | ) |

_____

### DEFENDANT'S OPPOSITION TO PLAINTIFF'S VERIFIED
### MOTION FOR AN AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

In its Motion for Attorneys' Fees, Plaintiff, Judicial Watch, claims that it has

"substantially prevailed" in this Freedom of Information Act ("FOIA") action, despite not having

prevailed on a single issue in litigation and agreeing to an entry of judgment in favor of

Defendant, Bureau of Land Management ("the BLM").  The record unequivocally shows,

however, that Plaintiff did not "substantially prevail" in this action, and is neither eligible nor

entitled to an award of attorneys' fees and litigation costs, because the BLM voluntarily released

documents to Plaintiff without a court order mandating that it do so.

As an initial matter, this Court must apply the law that was in effect at the time this suit

was filed.  Although Congress recently amended the FOIA to change the legal rights of the

parties as they relate to the recovery of legal fees, those amendments do not apply retroactively.

Indeed, established Supreme Court precedent presumes that new statutes will not be applied

retroactively absent a clear congressional intent to the contrary.  Congress has expressed no such

intent to apply the FOIA amendments retroactively, either in the statutory text or the legislative

history.  Moreover, because FOIA's fee provision is a waiver of sovereign immunity, the terms of the statute's waiver must be strictly construed, and the requisite congressional expression of intent of retroactivity must be absolutely express.

Under prevailing law, therefore, which holds that a plaintiff does not "substantially prevail" absent obtaining court-ordered relief, Plaintiff is not eligible to recover fees in this case. Even applying the new attorney fee amendment to this case, Plaintiff's petition still fails.  There is no evidence that the filing of Plaintiff's complaint caused the BLM to act any differently than it would have absent the lawsuit. To the contrary, the evidence establishes that the BLM had already searched for and identified documents responsive to Plaintiff's request, and had reviewed those documents in preparation for release to Plaintiff when Plaintiff filed this lawsuit in September 2007.  The reason for the delay in completing processing of Plaintiff's request was simply due to the fact that the BLM had only one person processing all of the BLM Washington Office's FOIA requests.  Plaintiff, therefore, is not eligible for attorney fees, even under the so-called "catalyst theory" of recovery imposed by the new amendments to FOIA.

Finally, even if Plaintiff was eligible to recover attorney fees, it is not entitled to those fees.  In considering entitlement, a court must consider various factors including whether the award would discourage an agency's unreasonable withholding of information and whether the government's delay was designed to avoid embarrassment or frustrate the requester.   As discussed in detail below, none of these factors is present here.  The BLM acted in good faith in processing Plaintiff's request, and voluntarily released all responsive documents to Plaintiff. Accordingly, for these reasons, and those described more fully herein, this Court should deny Plaintiffs' Verified Motion For an Award of Attorneys' Fees and Litigation Expenses ("Pl.

Mot.").

<div align="center">**BACKGROUND**</div>

## I.    Factual Background

By e-mail message dated March 8, 2007, Plaintiff submitted a FOIA request to the

BLM's Washington, D.C. headquarters, seeking records of:

(1)    Contacts or communications between the Bureau of Land Management and any of the following individuals and/or their offices and staffs concerning or relating to any proposal to exchange public land in the Coyote Springs Valley, Clark County, Nevada, for the land owned by Coyote Springs Investment, LLC:

   a.    U.S. Senator Harry Reid;
   b.    U.S. Senator John Ensign; or
   c.    U.S. Representative Jim Gibbons.

(2)    Contacts or communications between the Bureau of Land Management and any of the following individuals and/or their offices and staffs concerning or relating to the 2004 or 2005 agreement to exchange public land in the Coyote Springs Valley, Clark County, Nevada, for the land owned by Coyote Springs Investment, LLC:

   a.    U.S. Senator Harry Reid;
   b.    U.S. Senator John Ensign; or
   c.    U.S. Representative Jim Gibbons.

(3)    Contacts or communications between the Bureau of Land Management and any of the following individuals and/or their offices and staffs concerning or relating to the February 18, 2005 issuance of Patent No. 27-2005-0081 to Coyote Springs Investment, LLC:

   a.    U.S. Senator Harry Reid;
   b.    U.S. Senator John Ensign; or
   c.    U.S. Representative Jim Gibbons.

Compl., ¶5; Barbara J. Brown Declaration ("B. Brown Decl.") ¶2.   Shortly thereafter, the BLM

Nevada's Las Vegas Field Office received an identical FOIA request from Plaintiff.  Compl., ¶

5; Richard Brown Declaration ("R. Brown Decl.") ¶ 2.  On March 9, 2007, the BLM assigned

Plaintiff's request an internal tracking number, 2007-37, and acknowledged receipt of Plaintiff's

FOIA request in an e-mail message addressed to Plaintiff's counsel.  Complaint, ¶ 6; B. Brown

Decl. ¶ 2.

       The BLM conducted a comprehensive search for documents responsive to Plaintiff's

request in the BLM's Washington, D.C. office, the BLM's Nevada headquarters, and the BLM

Nevada's Las Vegas Field Office.  B. Brown Decl. ¶¶ 3-8, 10; R. Brown Decl. ¶¶ 2-9.  The BLM

employees in the BLM Director's Office, the Division of Legislative Affairs and

Correspondence, the Division of Lands, Realty and Cadastral Survey, the Division of Natural

Resources, Lands, and Planning, the Office of Communications, and the Division of Lands

conducted manual searches of their hard copy files for documents responsive to Plaintiff's

request.  B. Brown Decl. ¶¶ 3-8, 10; R. Brown Decl. ¶¶ 2-9.  In addition, all of the BLM

employees conducted searches of their electronic files, using the following words as search terms

to identify responsive documents: "Harry Reid," "John Ensign," "Jim Gibbons," "Coyote

Springs," "Coyote Springs Valley," "Coyote Springs Investment," and "land exchange."  B.

Brown Decl. ¶¶ 5-10; R. Brown Decl. ¶¶ 3-6, 8, 9.  The BLM had already searched for and

identified documents responsive to Plaintiff's request when Plaintiff filed this lawsuit on

September 5, 2007.  B. Brown Decl. ¶¶ 2-12.  At the time Plaintiff filed its Complaint, the BLM

was only awaiting legal review by the Office of the Solicitor before releasing the documents to

Plaintiff.  B. Brown Decl. ¶¶11-12.

       Although the BLM had received Plaintiff's FOIA request on March 8, 2007, it was

unable to complete processing of the request until September 20, 2007, because there was only

one BLM employee, the FOIA Coordinator for the BLM's Washington Office, processing all of the Washington Office's FOIA requests.  Barbara J. Brown Supplemental Declaration ("B. Brown Supp. Decl.") ¶ 3.  At the time that the BLM received Plaintiff's request, the FOIA Coordinator had nineteen other FOIA requests that required processing before she could process Plaintiff's request and other responsibilities to attend to including: (1) several FOIA requests that were granted expedited processing; (2) providing information and documentation to the BLM's FOIA Appeals Office concerning FOIA requests received by the Washington Office that were subject to administrative review; and (3) preparing monthly and annual reports related to her FOIA duties.  Id. ¶¶ 5-7.  Because of all of these duties, and the BLM's ongoing receipt of new FOIA requests, the BLM Washington Office's FOIA Coordinator was unable to finish processing Plaintiff's request until September 20, 2007.  Id.  She did, however, provide Plaintiff's counsel with updates regarding the status of Plaintiff's request on at least four separate occasions.  Id. ¶ 7 & Exhibit 1 to B. Brown Supp. Decl.  During each of these communications, the BLM Washington Office's FOIA Coordinator apologized for the delay in processing the request and, in at least two instances, explained that the delay was due to the fact that the FOIA office in the BLM's Washington Office was short staffed.  B. Brown Supp. Decl. ¶ 7 & Exhibit 1 to B. Brown Suppl. Decl.

As a result of the search the BLM Washington Office's FOIA Coordinator initiated and facilitated, the BLM identified thirty-five pages of documents as responsive to Plaintiff's request.  B. Brown Decl. ¶ 13; B. Brown Supp. ¶ 7.  The BLM withheld only one cell phone number of an agency employee pursuant to Exemption b(6) of FOIA, a withholding not contested by Plaintiff.  B. Brown Decl. ¶ 13.  By letter dated September 20, 2007, the BLM

voluntarily released to Plaintiff all thirty-five pages of responsive documents.  B. Brown Decl. ¶¶ 11, 12.

In October 2007, in attempt to resolve this litigation outside of court, Defendant's counsel agreed to provide Plaintiff's counsel with the declarations the BLM intended to submit in support of its Motion for Summary Judgment to demonstrate the adequacy of the search the agency conducted.  B. Brown Decl. ¶ 14; R. Brown Decl. ¶14.  Plaintiff's counsel reviewed the declarations, and in an November 19, 2007 e-mail, raised concerns about the adequacy of the search the BLM initially conducted.  Id.  In response to these concerns, the BLM agreed to conduct a supplemental search, which ultimately did not yield any additional responsive documents.  B. Brown Decl. ¶¶ 14-24; R. Brown Decl. ¶¶ 15-17.

Counsel for the BLM provided declarations to Plaintiff's counsel, delineating the scope of the second search the BLM conducted at Plaintiff's counsel's request.  After reviewing these declarations, Plaintiff decided not to challenge the adequacy of the search the agency conducted.[1] See  Pl. Mot., at 3.  Shortly thereafter, the parties filed a Stipulation of Entry of Judgment (Dkt. No. 11) in favor of the BLM, which the court entered in a January 7, 2008 Order (Dkt. No. 12).  On January 22, 2008, Plaintiff filed the instant motion, seeking attorneys' fees and costs under FOIA (Dkt. No. 13).

## II.    Statutory Background

Pursuant to 5 U.S.C. § 552(a)(4)(E)(i) of FOIA, a court may assess "reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has

---

[1]Both of these declarations – the declarations of Barbara J. Brown and Richard Brown – are attached in support of this motion.

substantially prevailed."  Prior to 2001, courts employed the "catalyst theory" to determine whether a plaintiff had "substantially prevailed" and was therefore eligible for attorneys' fees under FOIA.  Under the "catalyst theory," "[s]o long as the litigation substantially caused the requested records to be released, the FOIA plaintiff could recover attorneys' fees even though the district court had not rendered a judgment in the plaintiff's favor." Oil Chemical & Atomic Workers v. DOE, 288 F.3d 452, 454 (D.C. Cir. 2002) (hereinafter "OCAW") (discussing the history of the catalyst theory).

In 2001, however, the Supreme Court expressly rejected the application of the "catalyst theory" to an award of attorneys' fees under the Fair Housing Amendments in Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res., 532 U.S. 598 (2001).  In that case, the Supreme Court held that absent some type of judicial *imprimatur*, a plaintiff could not be considered a "prevailing party" and an award of attorney's fees was therefore impermissible.  Buckhannon, 532 U.S. at 605.  In OCAW, the D.C. Circuit applied the Supreme Court's decision in Buckhannon to interpret the term "substantially prevail" as set forth in FOIA's attorney fee provision.  See generally OCAW, 288 F.3d 452 (D.C. Cir. 2002).  The D.C Circuit held that, under the analysis set forth in Buckhannon, a plaintiff "substantially prevails" within the meaning of FOIA's attorneys' fee provision if the plaintiff has "'been awarded some relief by [a] court,' either in a judgment on the merits or in a court-ordered consent decree." Summers v. U.S. Dep't of Justice, 477 F. Supp. 2d 56, 64-67 (D.D.C. 2007) (citing, among other cases, OCAW).  In the context of a request for attorneys' fees when the parties to a FOIA suit have agreed to a voluntary settlement, courts in this jurisdiction have held that a plaintiff has not "substantially prevailed" because "such settlements do not create a "'material alteration of the

legal relationship of the parties' necessary to permit an award of attorney's fees.'" <u>Summers</u>, 477 F. Supp. 2d at 67 (quoting <u>Buckhannon</u>, 532 U.S. at 604). Since 2002, the D.C. Circuit has held that the analysis set forth in <u>Buckhannon</u> controls the resolution of claims for attorney's fees made pursuant to FOIA. <u>See, e.g.</u>, <u>OCAW</u>, 288 F.3d at 456-57; <u>Campaign for Responsible Transplantation v. Food & Drug Admin.</u>, 511 F.3d 187, 192-93 (D.C. Cir. 2007); <u>Davy v. Central Intelligence Agency</u>, 456 F.3d 162, 164-65 (D.C. Cir. 2006); <u>Davis v. Dep't of Justice</u>, 460 F.3d 92, 105-06 (D.C. Cir. 2006); <u>Edmonds v. Federal Bureau of Investigation</u>, 417 F.3d 1319, 1322 (D.C. Cir. 2005).

On December 31, 2007, the President signed into law the Open Government Act of 2007 ("Open Government Act") that amends, among other provisions of FOIA, 5 U.S.C. § 552(a)(4)(E), the provision governing the award of attorneys' fees. Pub. L. No. 110-175, 121 Stat. 2524, S.2488, 110th Cong. § (a)(4)(E)(ii) (hereinafter the "FOIA fee amendment"). The amended attorneys' fee provision legislatively overturns the Supreme Court's decision in <u>Buckhannon</u> as applied in FOIA cases and restores the application of the "catalyst theory" to attorney fee determinations made under the statute. Under the new FOIA fee amendment, the term "substantially prevail" now includes "a voluntary change or unilateral change in position by the agency, if the complainant's claim is not insubstantial." S.2488, 110th Cong. § (a)(4)(E)(ii). Thus, under the terms of the recently enacted FOIA fee amendment, a plaintiff may be deemed to have "substantially prevailed" in a FOIA action even when the parties to the action agree to voluntarily settle the case. Congress, however, did not specify an effective date for the statute's new attorney fee provision.

**ARGUMENT**

**I.     The New FOIA Fee Amendment Codified in the Open Government Act Cannot Apply Retroactively Absent Express Congressional Intent**

On September 20, 2007, when the BLM voluntarily released records responsive to Plaintiff's request, the D.C. Circuit's decision in <u>OCAW</u> controlled the resolution of requests for attorney's fees under FOIA.  <u>See</u> <u>Davis v. CIA</u>, 460 F.3d 92 (D.C. Cir. 2006), *cert. denied*, 127 S. Ct. 3002 (2007), *and on remand to*, 2007 WL 4275512 (D.D.C. Dec. 3, 2007) (following <u>OCAW</u>).   Plaintiff, however, now seeks to have this Court apply the new FOIA fee amendment codified in the Open Government Act, arguing that the new attorney's fee provision should be applied retroactively to its case.

Contrary to Plaintiff's assertions, the new FOIA fee amendment set forth in the Open Government Act cannot apply retroactively absent clear and unequivocal congressional intent. <u>See</u> <u>Plaut v. Spendthrift Farm, Inc.</u>, 514 U.S. 211, 237 (1995) (admonishing that "statutes do *not* apply retroactively *unless* Congress expressly states that they do") (emphasis in original). Indeed, there is a presumption *against* applying statutes retroactively absent congressional intent to the contrary.  <u>See</u> <u>id.</u> (citing  <u>Landgraf v. USI Film Prods.</u>, 511 U.S. 244, 284-85 (1994)) (emphasis added).  Here, the new FOIA fee amendment does not contain any provision demonstrating Congress's unambiguous intent to apply the new law to cases pending before its December 31, 2007 enactment.  Indeed, although other provisions of the Open Government Act contain effective dates,[2] Congress failed to establish an overall effective date for the new FOIA

---

[2]For example, § 10 of the Open Government Act, which creates a new Office of Government Information within the National Archives and Records Administration, provides

fee amendment.

Where, as here, the plain language of the statute does not provide any evidence that Congress intended the statute to apply retroactively, courts are instructed not to look beyond the statute's text. See Dodd v. U.S., 545 U.S. 353, 359 (2005). Nonetheless, there is nothing in the legislative history of the FOIA fee amendment that provides clear evidence that Congress intended to apply the catalyst theory codified in the Open Government Act to cases pending before its enactment. In fact, a review of the legislative history of the FOIA fee amendment shows that retroactive application of the catalyst theory not only would be contrary to Congress's understanding, but demonstrates that Congress was aware that restoring the catalyst theory potentially would impact future agency decision-making.[3] As the foregoing demonstrates, Congress did not express its unequivocal intent to apply retroactively the new FOIA fee amendment to cases pending before the Open Government Act's enactment date.

In addition, where, as here, the statute at issue involves a waiver of sovereign immunity, courts are instructed to strictly construe the sovereign immunity waiver, reading its terms "no more broadly than [] require[d]," and resolving "'any doubts about the scope of [the] waiver . . .

---

that the provision "shall take effect on the date of enactment of this Act." In addition, in certain procedural amendments, Congress specified that these amendments shall take effect "one year after the date of enactment of this Act and apply to requests for information under section 552 of title 5, United States Code, filed on or after the effective date." See, e.g., § 6 - establishing time limits for agencies to act on requests; § 7 establishing individualized tracking numbers for requests and status information.

[3]For example, Representative William Sali expressed concern that the new amendments might provide an incentive for federal agencies to avoid disclosure. See Cong. Rec. March 14, 2007, H2506 (daily ed.). Similarly, Senator Jon Kyl expressed his concern that "the standard we adopt today will lead some agency employees to withhold information that they would otherwise be inclined to release out of concern that unilaterally releasing the information will make the agencies subject to fee assessments." Cong. Rec., August 3, 2007, S10989 (daily ed.).

in favor of the narrower governmental liability.'" <u>Trout v. Sec'y of Navy</u>, 317 F.3d 286, 289-90

(D.C. Cir. 2003) (quoting <u>Nichols v. Pierce</u>, 740 F.2d 1249, 1257 (D.C. Cir. 1984)).  As applied

in the context of whether a newly amended law that waives sovereign immunity applies

retroactively, the D.C. Circuit has roundly refused to apply the statute's terms retroactively

absent an express direction from Congress to do so.[4]  <u>See</u> <u>Trout</u>, 317 F.3d at 290 (refusing to

apply retroactively the amendment to the Civil Rights Act allowing an award of interest because

neither the text of the statute nor its legislative history clearly indicated Congress intended this

provision to apply retroactively); <u>see also</u> <u>Brown v. Sec'y of Army</u>, 78 F.3d 645, 289-90 (D.C.

Cir. 1996) (same); <u>In re Jordan</u>, 745 F.2d 1574, 1576 (D.C. Cir. 1984) (applying the rule of strict

construction of waivers of sovereign immunity to attorney fee amendment to the Ethics Act

because "Congress did not state or imply that the attorneys fee amendment to the Ethics Act

would apply retroactively"); <u>Nichols v. Pierce</u>, 740 F.2d 1249, 1256-57 (D.C. Cir. 1984)

(refusing to apply retroactively attorney fee amendment to Equal Access to Justice Act

---

[4]Plaintiff argues that sovereign immunity does not prevent retroactive application of the new FOIA fee amendment because that amendment "did not create a new right to attorney's fees, but only clarified an existing right."  Pl.'s Mot., at 6 n.1 (quoting a statement by Senator Leahy, one of the sponsors of the Open Government Act that "[t]he bill clarifies that <u>Buckhannon</u> does not apply to FOIA cases," 153 Cong. Rec. S 15701, 15704 (daily ed. Dec. 14, 2007)).  The flaw in this argument is that <u>OCAW</u> clearly established that, after <u>Buckhannon</u>, the catalyst theory was no longer the law in FOIA cases litigated in this Circuit.  Indeed, without the enactment of the Open Government Act of 2007, <u>OCAW</u> and its progeny would still be binding on this Court's attorney fee determinations under FOIA.  In any event, it is undisputed that Congress reinstated the catalyst theory when it enacted the FOIA fee amendment at issue here. The pertinent inquiry, however, is whether Congress intended to apply the catalyst theory codified in the new FOIA fee amendment to agency action taken before the new law's enactment date.  Neither the statute's language nor its legislative history provides any clear evidence of Congress's intent on this point.

("EAJA") where the only issue remaining in the case was an attorney's fee claim).[5]   These

courts have reasoned that, to hold otherwise, "risks 'imposing upon the public fisc an

unanticipated and potentially excessive liability'" by applying the statute to "'a period of time

not envisioned by Congress.'"  Trout, 317 F.3d at 290 (citing, among other cases, Library of

Congress v. Shaw, 478 U.S. 310, 316 (1986)).  Accordingly, because Congress did not express a

clear intent to apply the attorneys' fee amendment codified in the Open Government Act

retroactively, and because the Open Government Act constitutes a waiver of sovereign

immunity, this Court should refuse to apply its terms to Plaintiff's lawsuit, which was filed three

months before the statute's enactment.[6]

There is an additional bar against applying the new FOIA fee amendment to the facts in

this case.  In Landgraf v. USI Film Prods., 511 U.S. 244 (1994), the Supreme Court instructed

courts to assess whether a statute has an impermissible retroactive effect by examining whether

---

[5]The D.C. Circuit's opinion in Cuneo v. Rumsfeld, 553 F.2d 1360, 1367 (D.C. Cir. 1974), which concluded that the FOIA provision governing attorneys' fees applied retroactively because "legislative history . . . reveals that Congress intended that the courts should look to the existing body of law on the award of attorneys' fees in determining whether an award is appropriate," is not to the contrary.  The Cuneo court reached this conclusion by applying the Supreme Court's decision in Bradley v. Richmond Sch. Bd., 416 U.S. 696 (1974), which instructs courts "to apply the law in effect at the time of decision unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary."  Id. at 711.  Since the Cuneo decision, however, the D.C. Circuit has made clear that, because Bradley did not involve a waiver of sovereign immunity, it does not apply when the question is whether a waiver of sovereign immunity is to be applied retroactively.  See Brown, 78 F.3d at 651-52, 654; Trout, 317 F.3d at 291.  Thus, the Cuneo decision is inapposite.

[6]Plaintiff's reliance on Tax Analysts v. I.R.S., No. 96-2285, 2000 U.S. Dist. LEXIS 5066 (D.D.C. March 31, 2000), is without merit.  In that case, the court expressly found that the legislative history of the statute at issue reflected Congress's unequivocal intent to apply the statute retroactively.  See Tax Analysts, U.S. LEXIS 5066, *6-8.  Here, the legislative history of the Open Government Act is silent regarding Congress's intent to apply the attorneys' fee provision to cases pending before its enactment.

the new provision attaches new legal consequences to events completed before its enactment.  If the answer to that question is "yes," courts should not apply the statute retroactively.  The Supreme Court explained that "statutory retroactivity has long been disfavored," id. at 268, and that "the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal."  Id. at 265 (internal quotation and citation omitted). See also INS v. St. Cyr, 533 U.S. 289, 316 (2001) (explaining that, absent clear congressional intent to the contrary, conduct "should ordinarily be assessed under the law that existed when the conduct took place. . . ."); Trout, 317 F.3d at 291 (instructing courts to focus on the conduct at issue prior to enactment of the statute).

In the instant case, when, in September 2007, the BLM voluntarily released documents responsive to Plaintiff's FOIA request, OCAW and its progeny clearly controlled the resolution of attorney fee requests made pursuant to FOIA in this Circuit, and those cases unequivocally held that the catalyst theory did not apply to claims for attorney fees under FOIA.  To apply the new FOIA fee amendment retroactively to conduct undertaken by the BLM three months prior to the enactment of the FOIA fee amendment at issue, would attach new legal consequences to events completed before its enactment.  To that point, the new FOIA fee amendment legislatively overturned the well-established scope of the "substantially prevailed" analysis set forth in Buckhannon.   In addition, under the new FOIA fee amendment, government agencies, for the first time, must pay fee awards from their own appropriated funds, rather than the Judgment Fund.[7]

_____

[7]The Open Government Act states: "Notwithstanding section 1304 of title 31, United States Code, no amounts may be obligated or expended from the Claims and Judgment Fund of the United States Treasury to pay the costs resulting from fees assessed under section

13

Accordingly, for the foregoing reasons, this Court should conclude that the FOIA fee amendment cannot apply retroactively to the case at hand and that the reasoning employed by the Supreme Court in <u>Buckhannon</u>, as adopted by the D.C. Circuit in <u>OCAW</u> and its progeny, controls this Court's resolution of Plaintiff's request for an award of attorneys' fees and costs. <u>See</u> <u>Trout</u>, 317 F.3d at 292 (observing that "[a]bsent clear congressional intent, conduct 'should be assessed under the law that existed when the conduct took place'").

A.    **Under the Buckhannon Analysis, Plaintiff Cannot Prove That It Has Substantially Prevailed in This Litigation and Therefore Is Not Eligible For An Award of Attorneys' Fees**

Applying the <u>Buckhannon</u> analysis here, Plaintiff's request for an award of attorneys' fees should be denied.  To prevail on its motion for an award of attorneys' fees, Plaintiff must prove that there has been a "'judicially sanctioned change in the legal relationship of the parties.'"  <u>Davis</u>, 460 F.3d at 105 (quoting <u>Buckhannon</u>, 532 U.S. at 605).  In other words, Plaintiff must proffer evidence that it was awarded some form of relief by this Court through either an enforceable judgment on the merits or a court-ordered consent decree.  <u>See</u> <u>Davis</u>, 460 F.3d at 105; <u>OCAW</u>, 288 F.3d at 456-57.

In <u>Davis</u>, the D.C. Circuit held that the plaintiff in that case was not a "prevailing party" within the meaning of FOIA because the Federal Bureau of Investigation ("FBI") had produced material responsive to plaintiff's request, none of "which w[as] produced as the result of a 'judgement on the merits' or a 'court-ordered consent decree.'" 460 F.3d 92, 105-06 (D.C. Cir. 2006) (quoting <u>OCAW</u>, 288 F.3d at 457).  In that case, the absence of a judgment on the merits

---

552(a)(4)(E) of title 5, United States Code.  Any such amounts shall be paid only from funds annually appropriated for any authorized Federal agency against which a claim or judgment has been rendered."  S.2488, 110th Cong. § (a)(4)(E)(ii).

or a court-ordered consent decree was fatal to plaintiff's argument that it had substantially prevailed within the meaning of FOIA.  Id.; cf. Campaign for Responsible Transplantation, 511 F.3d at 196-97 (plaintiff had "substantially prevailed" within the meaning of FOIA where district court granted partial summary judgment in favor of plaintiff and ordered FDA to produce certain records similar to those it had already released); Davy, 456 F.3d at 165-66 (fees awarded where district court issued an order requiring CIA to provide plaintiff with responsive documents within a certain time period); Edmonds, 417 F.3d at 1326-27 (awarding attorneys' fees where trial court had ordered expedited processing of plaintiff's FOIA request).

Here, the BLM released all of the documents responsive to Plaintiff's request shortly after Plaintiff filed suit and without the issuance of an order from this Court or any stipulation requiring the agency to release documents.  Indeed, the only order this Court has entered, besides the two orders granting additional time in which to file dispositive motions, is the January 7, 2008 Order, granting judgment in favor of the BLM.   Because this Court has not issued an order in this case that constitutes a "judicially sanctioned change in the legal relationship of the parties," and because the BLM has voluntarily produced documents responsive to Plaintiff's request, this Court should find that Plaintiff has not "substantially prevailed" and deny the request for attorney's fees. See Summer v. U.S. Dep't of Justice, No. 98-1837 (RWR), 2007 WL 2111049, at * 2 (D.D.C. July 23, 2007) (explaining that "'defendant's voluntary change in conduct . . . lacks the necessary judicial *imprimatur* on the change" to find that the plaintiff has substantially prevailed).

## II.     Even Assuming, *Arguendo*, That The FOIA Fee Amendment Applies Retroactively, Plaintiff's Petition Still Fails

Even if this Court finds that the catalyst theory codified in the new FOIA fee amendment

applies to cases pending before its enactment, Plaintiff is still unable to demonstrate that it

substantially prevailed in this litigation under the catalyst theory.  To prevail in its request for an

award of attorneys' fees under FOIA, Plaintiff must prove that: (1) it is eligible for attorneys'

fees; and (2) it is entitled to an award of attorneys' fees and costs.  See  Weisberg v. U.S. Dep't

of Justice, 745 F.2d 1476, 1495 (D.C. Cir. 1984);  Simon v. U.S., 587 F. Supp. 1029, 1031

(D.D.C. 1984).   As set forth below, Plaintiff cannot satisfy its burden on either prong of this

two-part test.

     **A.**     **Plaintiff Is Not Eligible for Attorneys' Fees Because It Did Not Substantially Prevail In This Litigation**

     To prove that it is eligible for an award of attorneys' fees, Plaintiff must first demonstrate

that it has "substantially prevailed" in the litigation.  Alliance for Responsible CFC Policy, Inc.

v. Costle, 631 F. Supp. 1469, 1470 (D.D.C. 1986) ("[T]he complainant must show that he

'substantially prevailed' and therefore is 'eligible' for an award.").  "Whether a party has

'substantially prevailed' and thus is eligible for an award is 'largely a question of causation.'"  Id.

(quoting Weisberg, 745 F.2d at 1496).  As discussed above, the attorney fee amendment to the

Open Government Act restored the catalyst theory as an alternative basis for finding that a FOIA

requester had "substantially prevailed" if it "obtained relief through . . . a voluntary or unilateral

change in position by the agency, [and] of the complainant's claim is not insubstantial." § 4 of

the Act, amending 5 U.S.C. § 552(a)(4)(E)(ii)(1)(II).  Accordingly, under the catalyst theory, to

prove causation where, as here, there has been no court order compelling agency disclosure, a

plaintiff  "'must show that the prosecution of the action could reasonably be regarded as

necessary to obtain the information and that a causal nexus exists between the action and the

agency's surrender of that information.'"  Id. (internal citation omitted).  Thus, the "burden is on

the plaintiff to demonstrate a direct cause-and-effect relationship, and the requirement is a rigorous one." Republic of New Afrika v. Fed. Bureau of Investigation, 645 F. Supp. 117, 119 (D.D.C. 1986).

In support of its argument that it is eligible for attorney's fees, Plaintiff argues that it "substantially prevailed as the agency[, the BLM,] voluntarily and unilaterally changed its position regarding the release of responsive documents following the initiation of this lawsuit." Pl.'s Mot., at 5. However, the D.C. Circuit has made clear that "[a]lthough an agency cannot prevent an award of attorneys' fees simply by releasing the requested information without requiring the complainant to obtain a court order, the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." Weisberg, 745 F.2d at 1496; see also Simon, 587 F. Supp. at 1031 ("[T]he mere sequence of events – i.e., that production followed the litigation of a suit – does not establish plaintiffs' eligibility for fees"); Alliance for Responsible CFC Policy, Inc., 631 F. Supp. at 1470 (same).

Moreover, the record evidence shows that the filing of Plaintiff's lawsuit was *not*, as Plaintiff insists, the causal link precipitating the BLM's release of documents. The record belies Plaintiff's assertions that the agency changed its position regarding the release of documents following the initiation of this lawsuit. Indeed, the BLM had already searched for and identified documents responsive to Plaintiff's request and had reviewed those documents in preparation for release to Plaintiff when Plaintiff filed this lawsuit in September 2007. See B. Brown Decl. ¶¶ 3-11; B. Brown Supp. Decl. 5-7. The BLM Washington Office's FOIA Coordinator was only waiting for the Office of the Solicitor to complete its legal review when Plaintiff filed this lawsuit. B. Brown Decl. ¶ 11. Thus, as the foregoing shows, the BLM did not change its

17

position regarding releasing documents responsive to Plaintiff's request because the agency *always* intended to respond to its request.  B. Brown Decl. ¶¶ 2-13.

Furthermore, this Court's consideration of the three-factors delineated in <u>Cox v. Dep't of Justice</u>, 601 F.2d 1, 6 (D.C. Cir. 1979), to determine whether Plaintiff's lawsuit was the causal nexus in the BLM's decision to release responsive documents weighs against a finding that Plaintiff substantially prevailed.  To make this determination, the D.C. Circuit has instructed courts to consider whether: (1) the agency made a good faith effort to discover and disclose material; (2) the scope of the request caused a delay in disclosure; and (3) the agency was burdened by other duties that delayed its response.  <u>Alliance for Responsible CFC Policy, Inc.</u>, 631 F. Supp. at 1470 (citing, among other cases, <u>Cox v. Dep't of Justice</u>, 601 F.2d 1, 6 (D.C. Cir. 1979)).   Here, although the BLM does not contend that the scope of Plaintiff's FOIA request caused the agency's delay in processing, the other factors weigh against a finding that Plaintiff "substantially prevailed" in this suit.

First, the record demonstrates that the BLM made a good faith effort to discover and disclose all responsive documents, a fact about which Plaintiff itself does not dispute.  <u>See</u> B. Brown Decl., ¶¶ 3-24; R. Brown Decl. ¶¶ 3-21. <u>See also</u> Pl's Mot., at 3 (stating that the "agency then agreed to make a good faith effort to address" plaintiff's concerns about the adequacy of the initial search it conducted).  Second, as set forth in detail in the Supplemental Declaration of Barbara J. Brown, the BLM was unable to complete processing of Plaintiff's request in a timely manner because there was only one BLM employee – the BLM Washington Office's FOIA Coordinator – processing all of the Washington Office's FOIA requests during the time period in which the agency received Plaintiff's request.  B. Brown Supp. Decl. ¶¶ 4-5.  At that time, the

18

FOIA Coordinator had nineteen other FOIA requests that required processing before she could complete Plaintiff's request.  Id. ¶ 5.   In addition, during this time period, the FOIA Coordinator was responsible not only for processing FOIA requests but also for, *inter alia* : (1) responding to several requests that required expedited processing; (2) providing information and documentation to the BLM's FOIA Appeals Office regarding requests that were subject to administrative review; (3) distributing requests for information and documentation from the BLM's FOIA Appeals Office to the FOIA Coordinators in other bureau offices; and (4) preparing monthly and annual reports related to her FOIA-processing duties.  Id. ¶¶ 5-6.  Because of these other attendant duties and responsibilities, the BLM Washington Office's FOIA Coordinator was unable to complete processing of Plaintiff's request until September 20, 2007, the date on which the BLM released all of the responsive documents to Plaintiff.  Id. ¶ 7.

Based on the foregoing, this Court should find that the filing of Plaintiff's lawsuit was *not* the causal nexus that precipitated the release of documents, and that the BLM's failure to release responsive documents in a timely fashion was "'an unavoidable delay accompanied by due diligence in the administrative processes,' and not the result of agency intransigence." Alliance for Responsible CFC Policy, Inc., 631 F. Supp. at 1470; Simon, 587 F. Supp. at 1029-32 (finding no causal link between the suit and the release of documents where defendants "did not refuse to produce any information [to plaintiffs]. . .[,] never invoked any [FOIA] exemptions . . . as purported obstacles" and where it was "equally plausible . . . that routine administrative inertia or unavoidable delay in identifying and assembling the information requested was the reason for defendants' belated compliance").  On this basis alone, Plaintiff has not substantially prevailed and its request for an award of attorneys' fees and costs should be denied.

19

**B.      Plaintiff Is Not Entitled To An Award of Attorneys' Fees**

Not only is Plaintiff unable to demonstrate that it has substantially prevailed in this litigation and therefore eligible for an award of attorneys' fees, but Plaintiff cannot prove that it is entitled to such an award.  Courts award attorneys' fees in FOIA cases "only when an award would serve FOIA's purposes of encouraging disclosures that are in the public interest and discouraging an agency's unreasonable withholding of information."  Alliance for Responsible CFC Policy, Inc., 631 F. Supp. at 1470.  Accordingly, to determine whether a plaintiff is entitled to an award of attorneys' fees, a court must consider: (1) the benefit to the public; (2) the commercial benefit to the plaintiff; (3) the nature of plaintiff's interest in the records sought; and (4) whether the government's withholding had a reasonable basis in the law.  Simon, 587 F. Supp. at 1032.

Even positing some public interest in the documents released, and acknowledging that Plaintiff did not receive any commercial benefit, it is undisputed that the BLM *never* unreasonably withheld any documents.  B. Brown Supp. Decl., ¶¶ 5, 7.  Indeed, "while an agency's failure to meet deadlines is *not* to be condoned, it does *not* warrant an award of fees in and of itself."  Simon, 587 F.  Supp. at 1032 (emphasis in original).  FOIA's legislative history makes clear that, in reviewing the fourth prong of this test, Congress "would not award fees where the government's withholding had a colorable basis in the law but would ordinarily award them if the withholding appeared to be merely to avoid embarrassment or to frustrate the requester."  Republic of New Afrika, Inc., 645 F. Supp. at 121-22 (citing S. Rep. No. 93-854, 93d Cong., 2d Sess. 19 (1974)).   The test under this fourth prong is one of "good faith" and the government "need only show that it was not unduly recalcitrant or otherwise obdurate."  Id. at

20

122.

Here, there is no evidence in the record that the BLM delayed processing Plaintiff's request "to avoid embarrassment or to frustrate the requester."  Indeed, the BLM *never* took the position that it would *not* respond to Plaintiff's request but rather started processing Plaintiff's request when it received the request in March 2007.  B. Brown Decl. ¶¶ 2-10; B. Brown Supp. Decl. ¶ 5.  In fact, as discussed above (p. 17), the BLM had already searched for and identified documents responsive to Plaintiff's request and was only awaiting legal review by the Office of the Solicitor before releasing the documents to Plaintiff when Plaintiff filed this action.  B. Brown Decl. ¶¶ 2-12; ; B. Brown Supp. Decl. ¶ 5-7.  As the foregoing shows, the BLM's efforts to process Plaintiff's request, although untimely, were made in good faith.

Moreover, Plaintiff's assertion that the BLM offered it no "legitimate explanation for its failure to produce records" before Plaintiff filed suit, Pl. Mot., at 9, is belied by the record evidence in this case.  Indeed, the BLM Washington Office's FOIA Coordinator apologized to Plaintiff's counsel for the delay in processing Plaintiff's request on at least four separate occasions and explained to him that the delay was due to the fact that BLM Washington Office's FOIA Office was short staffed.  Id. ¶ 7 & Exhibit 1.

Accordingly, even if Plaintiff brought this action to advance the public interest and derived no commercial benefit from the suit, "these factors do not carry the day" where, as here, the BLM's conduct was neither recalcitrant nor obdurate.  People For The Ethical Treatment Of Animals v. U.S. Dep't of Agric., No. Civ.A. 03-195(SBC), 2006 WL 508332, at * 6 (D.D.C. March 3, 2006).  Under these circumstances, the goals of FOIA's attorney fee provision would not be met because there is no evidence of bad faith on the BLM's part.  See, e.g., Id. (denying

fee award request because agency's action was reasonable and thus this factor "weigh[ed]

heavily against an award of attorneys' fees"); <u>Simon</u>, 587 F. Supp. at 1032-33 (refusing to grant

attorneys' fee award "to sanction sluggish agency response" where there was no evidence of bad

faith); <u>Republic of New Afrika, Inc.</u>, 645 F. Supp. at 117 (no attorneys' fee award because the

award would not "serve as a deterrent to agency obduracy").  For these reasons, Plaintiff's

motion for an award of attorney's fees should be denied.

## CONCLUSION

For the foregoing reasons, and for the reasons articulated in the supporting declarations,

Defendant respectfully requests that Plaintiff's Verified Motion For An Award of Attorney's

Fees and Litigation Expenses be denied.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEFFREY TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

 <u>/s/  Tamra T. Moore</u>
TAMRA T. MOORE, D.C. Bar No. 488392
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 6134
Washington, D.C.  20530
Telephone:  (202) 514-8095
Facsimile: (202) 616-8470
Email: Tamra.Moore@usdoj.gov

Dated: February 29, 2008                    Attorneys for Defendant

I certify that, on this 29th day of February 2008, I caused a copy of the foregoing Defendant's Opposition to Plaintiff's Verified Motion for An Award of Attorneys' Fees and Litigation Expenses, the attached Barbara J. Brown Declaration, Barbara J. Brown Supplemental Declaration, and Richard Brown Declaration, and the proposed order to be filed with the Clerk of the Court via the CM/ECF system, causing them to be served electronically.  The documents are available for viewing and downloading from the ECF system.


/s/ Tamra T. Moore
Tamra T. Moore

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC.          ) | |
|          ) | |
|          ) | |
|      Plaintiff,     ) | |
|   v.         ) | Civil Action No. 1:07CV01570 (RCL) |
|          ) | |
| BUREAU OF LAND MANAGEMENT,   ) | |
|          ) | |
|      Defendant.    ) | |
|          ) | |

**DECLARATION OF BARBARA J. BROWN**

I, Barbara J. Brown, hereby declare as follows:

1.     I am the Freedom of Information Act ("FOIA") Coordinator for the Washington Office of the Bureau of Land Management ("BLM") at the United States Department of the Interior.  In that capacity, I coordinate the search for responsive documents with BLM program offices, communicate with requesters, and prepare the responses to the FOIA requests that are submitted to the BLM Washington Office.

2.     On March 9, 2007, I received an e-mail message that was sent to the BLM Washington Office by Paul Orfanedes at Judicial Watch, Inc.  The e-mail message was a FOIA request seeking agency records concerning contacts or communications between BLM and the Nevada Congressional delegation and/or their offices and staff concerning: any proposal to exchange public land in Coyote Springs Valley, Nevada, for land owned by Coyote Springs Investment, LLC; the 2004 or 2005 agreement for the land exchange; and the February 18, 2005 issuance of Patent No. 27-2005-0081 to Coyote Springs Investment, LLC.  A true and correct copy of the request is attached hereto.  By e-mail message dated March 9, 2007, BLM acknowledged receipt of Plaintiff's request and assigned the request an internal tracking number, 2007-37.

3.      Based on the subject matter of the request, I determined that, of the offices and divisions that comprise the BLM Washington Office, the BLM Director's Office, the Division of Legislative Affairs and Correspondence, and the Division of Lands, Realty and Cadastral Survey were the BLM offices in Washington, D.C., that would be likely to have responsive documents.  I concluded that the Director's Office was likely to have documents responsive to Plaintiff's request because that office maintains records of contacts or communications with, among others, members of Congress.  I concluded that the Division of Legislative Affairs and Correspondence was likely to have documents responsive to Plaintiff's request because that office maintains records of contacts or communications with members of Congress and their staff.  Finally, I determined that the Division of Lands, Realty and Cadastral Survey was likely to have records pertaining to the Coyote Springs land exchange because it is the office that maintains records concerning public lands.  Within the BLM Director's Office, I identified the Executive Assistant to the Director as the individual most likely to have or know where to find documents responsive to Plaintiff's request.  Within the Division of Legislative Affairs and Correspondence, I identified Craig Leff, Deputy Division Chief of the Division of Legislative Affairs and Correspondence, as the individual most likely to have or know where to find documents responsive to Plaintiff's request.  And, within the Division of Lands, Realty and Cadastral Survey, I identified Jeff Holdren, Deputy Division Chief of the Division of Lands, Realty and Cadastral Survey, as the individual most likely to have or know where to find documents responsive to Plaintiff's request.  I contacted the Executive Assistant in the BLM Director's Office and asked that she search for documents responsive to Plaintiff's request.  I also contacted Mr. Leff and Mr. Holdren

2

and directed them to search for and provide me with any responsive documents from their respective offices, with the understanding that they would disseminate the request to the appropriate staff in their respective Divisions.

4.    In addition to initiating searches in the BLM Director's Office, the Division of Legislative Affairs and Correspondence, and the Division of Lands, Realty and Cadastral Survey, I forwarded Plaintiff's FOIA request to Richard Brown, the FOIA Coordinator for the BLM Nevada State Office in Reno, Nevada, because I understood that staff in the BLM Nevada office managed the Coyote Springs public land exchange.

5.    Shortly after forwarding Plaintiff's FOIA request to the individuals and offices that I concluded would be most likely to have or know where to find documents responsive to the request, the Executive Assistant to the BLM Director contacted me and informed me that her search of the Director's Office's correspondence database yielded no documents responsive to Plaintiff's request.  The Executive Assistant to the BLM Director is responsible for maintaining the correspondence database in the BLM Director's Office.  The correspondence database is an electronic database that tracks all Congressional correspondence – whether in e-mail or hard copy form.  The Executive Assistant to the BLM Director informed me that she searched the correspondence database using as search terms the words "land exchange," "Coyote Springs Valley," and "Coyote Springs Investment" but, as mentioned above, found no documents responsive to Plaintiff's request.

6.    Peggy Britell, the Correspondence Analyst for the Division of Legislative Affairs and Correspondence, contacted me and informed me that, at the request of Mr. Leff, she searched the Division's correspondence database.  Ms. Britell is responsible for

3

maintaining the correspondence database in the Division of Legislative Affairs and Correspondence. The correspondence database is an electronic database that tracks, among other communications, all Congressional correspondence received by the Division – whether in e-mail or hard copy form. Ms. Britell explained that she had conducted a search in the Division's correspondence database using as search terms the names of the three members of the Nevada Congressional delegation – "Harry Reid," "John Ensign," and "Jim Gibbons" -- and the term, "Coyote Springs." Ms. Britell's search of the Division's correspondence database, however, yielded no responsive documents.

7.    On March 16, 2007, I received an e-mail message from Laurie Sedlmayr, a Senior Legislative Specialist in the Division of Legislative Affairs and Correspondence who works on Nevada land issues. Ms. Sedlmayr informed me that she searched her hard copy and electronic files related to Nevada land issues and located responsive documents. On or about the following day, I went to her office and retrieved those documents.

8.    On March 19, 2007, I received an e-mail from Jeff Holdren, the Deputy Division Chief of the Division of Lands, Realty and Cadastral Survey. Mr. Holdren informed me that, after searching his hard copy files pertaining to Nevada land issues and his electronic files, he did not find any responsive documents. When Mr. Holdren searched his electronic files for documents responsive to Plaintiff's request, he used as search terms the names of the members of the Nevada Congressional delegation – "Harry Reid," "John Ensign," and "Jim Gibbons." Mr. Holdren also informed me that he forwarded Plaintiff's request to Robert Barbour, a Senior Realty Specialist. Mr. Barbour did not contact me to inform me that he had any responsive documents.

4

9.      On March 27, 2007, I received an e-mail message from Mr. Brown, the

FOIA Coordinator for BLM's Nevada State Office. Mr. Brown informed that the search

he initiated on behalf of BLM Nevada did not yield any responsive documents.

10.     On March 30, 2007, I received an e-mail message from Mr. Leff, the

Deputy Division Chief in the Division of Legislative Affairs and Correspondence. Mr.

Leff informed me that he searched for, but did not locate any documents responsive to

Plaintiff's request. Mr. Leff informed me that he had manually searched his hard copy

files pertaining to Nevada land issues and searched his electronic files using as search

terms the names of the members of the Nevada Congressional delegation – "Harry Reid,"

"John Ensign," and "Jim Gibbons" -- and the term "Coyote Springs." Mr. Leff further

informed me that although he had forwarded the request to the BLM Washington, D.C.

staff in his Division, he and the Senior Legislative Specialist in the Division of

Legislative Affairs and Correspondence, Laurie Sedlmayr, were the ones likely to have

responsive documents because they worked on the Nevada land issues. No other

members of his staff, with the exception of Ms. Sedlmayr, contacted me to inform me

that they had responsive documents.

11.     On August 9, 2007, I completed my initial processing of the responsive

documents and sent the package to the Office of the Solicitor for legal review. I was

unable to process the request before that time due to staffing shortages and other pressing

work assignments.

12.     On September 19, 2007, I received comments on the package from the

Office of the Solicitor. The following day, I finalized the package and sent it via

certified U.S. mail to Judicial Watch, Inc.

13.    After completing searches in the BLM Director's Office, the Division of

Legislative Affairs and Correspondence, and the Division of Lands, Realty and Cadastral

Survey in the Washington Office of the BLM and BLM Nevada, thirty-five pages of

responsive documents were located and those pages have been released to Plaintiff.  The

BLM withheld only a single cell phone number of an agency employee pursuant to

Exemtion b(6) of FOIA.

14.    We believe that the search described in paragraphs 1 through 13 above,

was likely to capture the records responsive to Plaintiff's request.  However, Plaintiff's

counsel raised the following concerns regarding the scope of the search the BLM

conducted in an email dated November 19, 2007 (attached hereto as Exhibit 2):

- The Director's Office only searched its correspondence database;
- The Director's Office did not use the names of the Nevada Congressional delegation or the patent number as search terms;
- There was no follow-up with the Senior Realty Specialist in Division of Lands, Realty and Cadastral Survey who did not respond to the search request to confirm that he had no responsive documents;
- There was no follow-up with the personnel in Division of Legislative Affairs and Correspondence who did not respond to the search request to confirm that each of them had no responsive documents; and
- Records in the Division of Public Affairs, Division of Regulatory Affairs, and Division of Intergovernmental Affairs were not searched.

15.    In an effort to address Mr. Orfanedes' concern that the Executive

Assistant to the Director's Office only searched the Office's "correspondence database"

and did not use the names of the Congressional delegation or the patent number as search

terms, I contacted Ms. Agolet, the Executive Assistant referenced in paragraph 5 above,

and asked her to describe in detail for me the search that she conducted to find

documents responsive to Plaintiff's request.  Ms. Agolet assured me that her prior search

for documents responsive to Plaintiff's FOIA request was not limited only to searching

6

the electronic database described in paragraph 5. Rather, she informed me that in addition to searching the correspondence database, she had also searched the electronic calendar and the e-mail of the Director, Kathleen Clarke, as well as the Director's hard copy files and travel logs. Ms. Agolet's search of the Director's hard copy files and travel logs did not yield any responsive documents. Ms. Agolet further informed me that the Director's Office does not maintain any telephone or meeting logs.

16.    With respect to the electronic file search, Ms. Agolet informed that she conducted searches of the Office's electronic correspondence database and the Director's electronic calendar and e-mail, utilizing the following search terms: "land exchange," "Coyote Springs Valley," and "Coyote Springs Investment." She explained that she used only these search terms and not the proper names of the Nevada Congressional delegation members because Plaintiff's request did not seek information concerning contacts with members of the Nevada Congressional delegation on matters other than the Coyote Springs Valley land exchange or Coyote Springs Investment, LLC. In addition, Ms. Agolet also explained that using those broad search terms resulted in an over-inclusive number of documents identified, which she then carefully reviewed for any reference to the members of the Nevada Congressional delegation, their offices, and Patent 27-2005-008 as referenced in Plaintiff's FOIA request. As discussed above in paragraph 5, Ms. Agolet's search of the Director's Office's electronic correspondence database and the Director's electronic calendar and e-mail did not yield any responsive documents.

17.    Ms. Agolet also informed me that the only other person in the Director's Office likely to have responsive documents, Deputy Director Jim Hughes, conducted a

7

search for documents responsive to Plaintiff's request at the time that Ms. Agolet

conducted her search. According to Ms. Agolet, it was Mr. Hughes' practice with respect

to FOIA requests to search his own electronic files, which consisted of his e-mail and

electronic calendar; Mr. Hughes did not maintain any hard copy subject matter files. Mr.

Hughes conducted a search of both his e-mail and electronic calendar, using as search

terms the names "Reid," "Ensign," "Gibbons," and "Coyote Springs," but did not find

any documents responsive to Plaintiff's request. Mr. Hughes did not conduct a search of

his electronic files using "Patent 27-2005-0081" as a search term because he would not

have received any documents, hard copy or electronic, related to patents.

18.     In order to address Mr. Orfanedes' concern that I did not conduct any

follow up with Senior Realty Specialist Robert Barbour in the Division of Lands, Realty

and Cadastral Survey regarding the results of the search he conducted as referenced in

paragraph 8 above, I contacted Mr. Barbour directly and asked him whether he had any

documents responsive to Plaintiff's request. In response to my request, Mr. Barbour

confirmed that he did not have any responsive documents.

19.     In order to address Mr. Orfanedes' concern that I did not conduct any

follow up with the personnel in the Division of Legislative Affairs and Correspondence

who did not respond to the search request to confirm that each of them had no responsive

documents, I contacted Mr. Leff and asked him to have his staff contact me directly

regarding whether their prior search had yielded any documents responsive to Plaintiff's

request. Mr. Leff forwarded the request to his staff, and with the exception of one

individual who has been out of the office on an extended medical leave, they all

8

confirmed that none of them has documents responsive has documents responsive to Plaintiff's request.

20.     Mr. Orfanedes also expressed concern that, when we conducted our original search, the BLM did not search in the Division of Public Affairs, the Division of Regulatory Affairs, or the Division of Intergovernmental Affairs.  In order to address this concern, I forwarded the following search instructions to Jeff Krauss, Division Chief of the Division of Public Affairs, and Ted Hudson, Acting Division Chief of the Division of Regulatory Affairs, asking that they distribute this request to staff in their respective Divisions who were likely to have documents responsive to Plaintiff's request:

> Pursuant to the attached FOIA request, please search your paper and electronic materials for documents concerning or reflecting communications or contacts between the BLM and the offices of U.S. Senator Harry Reid, U.S. Senator John Ensign, and/or U.S. Representative Jim Gibbons concerning the Coyote Springs Valley land exchange proposal, Coyote Springs Investment, LLC, and/or Patent # 27-2005-0081. You must complete your search for responsive documents by noon Wednesday, December 5, 2007.
>
> With respect to your paper materials, please be sure to search general office files, personal office files, correspondence files, as well as calendars, meeting logs and notes, travel logs, telephone logs, and any other materials that might contain documents responsive to this FOIA request.  With respect to your electronic materials, including e-mail, databases, word-processing documents, calendars, and spreadsheets, please be sure to search for documents responsive to this request using the following search terms: "Coyote Springs," "Reid," "Ensign," "Gibbons," and "Patent 27-2005-0081."

21.     In October 2007, the BLM merged the Division of Intergovernmental Affairs into the Division of Legislative Affairs and Correspondence.  I contacted Mr. Leff, the Deputy Division Chief of the Division of Legislative Affairs and Correspondence, and asked him to forward the above search instructions to the staff in

his Division who were formerly staff in the Division of Intergovernmental Affairs. Mr.

Leff informed me that staff in the former Division of Intergovernmental Affairs would

not have documents responsive to Plaintiff's FOIA request because the only function of

that Division was to organize and manage the BLM's Resource Advisory Councils,

which are groups of local citizens who advised the BLM on resource issues. Given that

staff in the former Division of Intergovernmental Affairs worked only on organizing and

managing these Resource Advisory Councils, Mr. Leff informed me that former Division

of Intergovernmental Affairs staff would not have documents responsive to Plaintiff's

request.

     22.     Mr. Krauss informed me that he became Division Chief of the Division of

Public Affairs in early December 2007. Therefore, he contacted his direct supervisor,

Celia Boddington, who was, until July 2007, the Division Chief of the Division of Public

Affairs. Ms. Boddington is currently the Assistant Director of Communications with

supervisory responsibilities over the Division of Public Affairs and the Division of

Legislative Affairs and Correspondence. Ms. Boddington informed Mr. Krauss that the

Division of Public Affairs would not have documents responsive to Plaintiff's request

because the Division did not handle matters associated with members of Congress.

     23.     Within the Division of Regulatory Affairs, Mr. Hudson forwarded the

search instructions referenced in paragraph 14, to Ian Senio, who was the Division Chief

of the Division of Regulatory Affairs at the time Plaintiff submitted its FOIA request,

because Mr. Hudson concluded that Mr. Senio was the individual most likely to have or

know where to find documents responsive to the request. Mr. Senio contacted me and

informed that, after conducting a search for responsive documents using the search

parameters emailed to him by Mr. Hudson, that he did not find any documents responsive to Plaintiff's request. In addition, Mr. Senio determined that the only other place in the Division of Regulatory Affairs that might have documents responsive to Plaintiff's request was the Federal Register Notice database, an electronic database that contains the BLM Notices that appear in the Federal Register. Accordingly, he asked Kelly Odom, the Executive Assistant of the Division of Regulatory Affairs, to conduct an electronic search of the Federal Register Notice database, using the search parameters referenced in paragraph 14. She conducted an electronic search of the Federal Register database but did not find any documents responsive to Plaintiff's FOIA request.

24. In sum, none of the supplemental searches conducted by the BLM produced documents responsive to Plaintiff's request.

25. The statements set forth in this declaration are based upon my personal knowledge, upon information furnished to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 19, 2007

Barbara J. Brown
FOIA Officer
Bureau of Land Management

11



"Paul Orfanedes"
<POrfanedes @JudicialWatch
.org>

03/08/2007 12:55 PM

To   <wo_foia@blm.gov>

cc

bcc

Subject   Freedom of Information Act Request

**VIA E-MAIL (wo_foia@blm.gov)**

March 8, 2007March 8, 2007

BUREAU OF LAND MANAGEMENT
1489 C Street, N.W.
Washington, DC  20240

Re:     **Freedom of Information Act Request**

Dear Sir/Madam:

Judicial Watch, Inc. hereby requests that the Bureau of Land Management ("BLM")
produce any and all agency records concerning or relating to the following subject matters
pursuant to the provisions of the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"):

(1)     Contacts or communications between the Bureau of Land Management
and any of the following individuals and/or their offices or staffs concerning or
relating to any proposal to exchange public land in the Coyote Springs Valley,
Clark County, Nevada, for land owned by Coyote Springs Investment, LLC:

a.     U.S. Senator Harry Reid;
b.     U.S. Senator John Ensign; or
c.     U.S. Rep. Jim Gibbons.

(2)     Contacts or communications between the Bureau of Land Management
and any of the following individuals and/or their offices or staffs concerning or
relating to the 2004 or 2005 agreement to exchange public land in the Coyote
Springs Valley, Clark County, Nevada, for land owned by Coyote Springs
Investment, LLC:

a.     U.S. Senator Harry Reid;
b.     U.S. Senator John Ensign; or
c.     U.S. Rep. Jim Gibbons.

(3)     Contacts or communications between the Bureau of Land Management
and any of the following individuals and/or their offices or staffs concerning or
relating to the February 18, 2005 issuance of Patent No. 27-2005-0081 to Coyote

*Received 3/9/07*

*2007-37*

Springs Investment, LLC:

          a.      U.S. Senator Harry Reid;
          b.      U.S. Senator John Ensign; or
          c.      U.S. Rep. Jim Gibbons.

Judicial Watch, Inc. also hereby requests a waiver of both search and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 5 U.S.C. § 552(a)(4)(A)(iii).

Judicial Watch, Inc. is entitled to a waiver of search fees as a member of the media under 5 U.S.C. § 552(a)(4)(A)(ii)(II). Judicial Watch regularly obtains information about the operations and activities of government through FOIA and other means, uses its editorial skills to turn this information into distinct works, and publishes and disseminates these works to the public through its Internet site, www.JudicialWatch.org and its monthly newsletter, among other means. Judicial Watch, Inc. intends to do likewise with the records it receives in response to this particular request. Judicial Watch, Inc. has been recognized as a member of the news media by the various federal agencies on numerous occasions.

Judicial Watch, Inc. also is entitled to a waiver of both search fees and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). The development of the Coyote Springs Valley is a matter of significant public interest and has generated both media scrutiny and at least one lawsuit. *See*, *e.g.*, "Desert Connections," *Los Angeles Times*, August 20, 2006; *see also Western Lands Project, et al. v. U.S. Bureau of Land Management, et al.*, Case No. 03:06-CV-00475-BES-VPC (D. Nevada). In addition, as a not-for-profit educational organization that seeks to promote integrity, transparency, and accountability in politics, government, and the law, Judicial Watch, Inc. does not seek to obtain these records for any commercial interest, but instead seeks them in furtherance of its educational, public interest mission.

You have 20 days from receipt of this request, excepting Saturdays, Sundays, and legal holidays, to determine whether to comply with the request and immediately notify us of your determination, the reasons therefor, and the right to appeal any adverse determination. 5 U.S.C. § 552(a)(6)(A).

If you do not understand this request or any portion thereof, or if you feel you require clarification of this request or any portion thereof, please contact us immediately at 202-646-5172.

Sincerely,

Paul J. Orfanedes
Judicial Watch, Inc.

# EXHIBIT 2

## Moore, Tamra (CIV)

| | |
|---|---|
| **From:** | Paul Orfanedes [POrfanedes@JudicialWatch.org] |
| **Sent:** | Monday, November 19, 2007 3:07 PM |
| **To:** | Moore, Tamra (CIV) |
| **Subject:** | RE: Judicial Watch v. Bureau of Land Management |

Tamara:

We have the following concerns about BLM's search affidavits:

Barbara Brown Declaration:

1)    Although the FOIA request sought records of "contacts or communications," the Director's Office only searched its "correspondence database." It does not state whether any other databases were searched, or if any other databases even exist. Nor does it state that any calendars, telephone logs, notes of meetings or other records of "contacts or communications" were searched (para. 5);

2)    The Director's Office did not use the Senators names as search terms and only searched based on the property name. Nor did it search for the patent number (para. 5);

3)    The Division of Lands, Realty and Cadastral Survey forwarded the request to a Senior Realty Specialist ("SRS"), but the declaration does not state whether the SRS advised Brown whether s/he possessed responsive doucments. Apparently, no follow-up was done, but instead it was assumed the SRS had no documents (para. 8);

4)    The Division of Legislative Affairs and Correspondence also forwarded the request to the "BLM Washington, D.C. staff in his Division," but "no other members of his staff, with the exception of Ms. Sedlmayer, contacted me to inform me that they had responsive documents." This also would appear to demonstrate a lack of follow-up (para. 10)

5)    BLM apparently did not search Division of Public Affairs, Division of Regulatory Affairs or the Division of Intergovernmental Affairs – all of which, upon reviewing the organizational chart on BLM's website, reasonably could possess records.

Richard Brown Declaration:

1)    Fails to specify which databases were searched and what terms were applied to the search;

2)    Did not search the Vegas Division of Land Sales & Acquisition (even though the national office with the similar name was searched) which could reasonably possess records.

Also, we don't see where any of the records produced by BLM ever reference Coyote Springs, which makes us question further the search that BLM performed. As a result, JW is not prepared to agree at this time that BLM's search was sufficient.

I was out on travel last week. Although I had intended to respond by November 16th, as you requested, I was not able to do so. Sorry for the delay. If you require any additional time in which to prepare and file your motion as a result, JW will not oppose a reasonable extension.

PJO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————
JUDICIAL WATCH, INC.                )
                                    )
                                    )
                    Plaintiff,      )
        v.                          )
                                    )    Civil Action No. 1:07CV01570 (RCL)
BUREAU OF LAND MANAGEMENT,          )
                                    )
                                    )
                    Defendant.      )
———————————————————)

**SUPPLEMENTAL DECLARATION OF BARBARA J. BROWN**

I, Barbara J. Brown, hereby declare as follows:

1.    I am currently the Freedom of Information Act ("FOIA") Coordinator for the Washington Office of the Bureau of Land Management ("BLM") at the United States Department of the Interior and have held this position since February 20, 2007.  In this capacity, I coordinate the search for documents responsive to FOIA requests with BLM program offices, communicate with requesters, and prepare the responses to the FOIA requests that are submitted to the BLM Washington Office.

2.    I respond to the requests on a "first in, first out" basis.  This means that I am frequently processing multiple requests at any given time.   My ability to complete these requests quickly and produce documents responsive to the request often depends on whether the request is uncomplicated or narrowly focused.   I am able to complete uncomplicated or narrow requests more quickly than broad or complex requests. However, sometimes FOIA requests are granted expedited processing, requiring me to process the request before others.

3.     Prior to February 20, 2007, I worked full-time in the BLM's Division of

Information Resource Management ("IRM") Governance, processing Temporary

Directives.  In addition to that position, the BLM also employed me on a part-time basis

to assist the person who was formerly the FOIA Coordinator in processing FOIA

requests.  At that time, there were three people, in addition to myself, who worked on

processing FOIA requests in the Washington Office: the FOIA Coordinator, the Acting

FOIA/Privacy Act Officer, and the Chief of the Division of IRM.

4.     Since February 20, 2007, the three individuals with whom I worked on FOIA

matters have left their positions, and I became the full-time FOIA Coordinator and the

only person processing FOIA requests in the BLM's Washington Office.[1]  At that time,

there were approximately twenty-four pending FOIA requests received by the

Washington Office that required processing.  This included a number of backlog requests,

the oldest of which was close to a year old.

5.     On March 8, 2007, the BLM's Washington Office received Judicial Watch's

FOIA request.  Although I initiated the search for documents responsive to the FOIA

request at that time the request was received, I was unable to complete processing the

request because there were approximately nineteen other FOIA requests that were in the

queue before the Judicial Watch request that required processing and completion.  In

addition, in March 2007, I received several FOIA requests that were granted expedited

processing and demanded a disproportionate amount of my time.

6.     I worked intermittently on processing the Judicial Watch request from March

8, 2007, when I received the FOIA request from Judicial Watch, until September 5, 2007,

_____

[1]On May 29, 2007, the BLM hired a full-time FOIA/Privacy Act Officer but her
responsibilities are focused solely on policy issues.

when Judicial Watch filed this lawsuit.  I was unable to devote 100% of my time to completing the Judicial Watch request due to other pending requests.  In addition, I was also responsible for various other FOIA-related duties during that time period, including: (i) providing information and documentation to the FOIA Appeals Office concerning FOIA requests to the Washington Office that were undergoing administrative review; (ii) distributing requests for information and documentation from the FOIA Appeals Office to the FOIA Coordinators in other bureau offices; (iii) attending meetings and participating in conference calls of the Department's FOIA officers and personnel; (iv) preparing monthly reports from our electronic FOIA tracking system; and (v) drafting an annual report for the BLM's Chief Information Officer.  During this time frame, the BLM Washington Office also received approximately fifteen new FOIA requests that required me to initiate searches for documents responsive to the request.

7.     Because of the foregoing responsibilities and duties, I was unable to complete processing of the Judicial Watch request until September 20, 2007, the date on which the BLM released thirty-five pages of responsive documents to Plaintiff. However, I provided Judicial Watch's counsel updates regarding the status of Judicial Watch's request on at least four separate occasions.  In each of these instances, I apologized for the delay in processing the request and, in at least two instances, explained that the delay was due to the fact that the BLM's Washington Office was short staffed. See, e.g., Exhibit 1, true and correct copies of e-mails from Barbara J. Brown to Paul Orfanedes on April 27, 2007, July 10, 2007, July 31, 2007, and August 3, 2007.

8.     The statements set forth in this declaration are based upon my personal knowledge, upon information furnished to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

In accordance with 28 U.S.C. ' 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27 day of February 2008.

Barbara J. Brown
FOIA Officer
Bureau of Land Management

**EXHIBIT 1**

**WO FOIA@BLM**
Sent by: Barbara J Brown

04/27/2007 11:38 AM

To   "Paul Orfanedes" <POrfanedes@JudicialWatch.org>
cc
bcc

Subject   RE: Freedom of Information Act Request No. 2007-37

Good Morning Mr. Orfanedes -

My apology for the delay in your response. We have received some documents in response to your request. Those documents must be reviewed to ensure that no FOIA exemptions apply. At this time, we only have one individual processing FOIA casefiles. We expect to complete the process on or before May 11, 2007. If any of the documents are withheld due to any of the FOIA exemptions, those documents must be reviewed by our Solicitor's Office before release which will add additional time to the process. I will provide you an update on your request on or before May 4, 2007. We thank you for your patience in regard to this matter. Please feel free to contact me if you have any concerns regarding this matter.

Barbara Brown

"Paul Orfanedes" <POrfanedes@JudicialWatch.org>



"Paul Orfanedes"
<POrfanedes@JudicialWatch
.org>

04/24/2007 06:34 PM

To   <WO_FOIA@blm.gov>
cc
Subject   RE: Freedom of Information Act Request No. 2007-37

Dear Sir/Madam:

Please advise me, at your earliest convenience, about the status of the above-referenced FOIA request.  Thanks.

Paul J. Orfanedes
Judicial Watch, Inc.
(202) 646-5172

-----Original Message-----
From: WO_FOIA@blm.gov [mailto:WO_FOIA@blm.gov]
Sent: Friday, March 09, 2007 10:32 AM
To: Paul Orfanedes
Subject: Re: Freedom of Information Act Request
Importance: High

Good Morning Mr. Orfanedes -

This email is to acknowledge receipt of your FOIA request sent in an email on March 8, 2007.  We received your email in this office on March 9, 2007. Your request has been assigned case number FOIA #2007-37.  Please refer to this number for all future inquiries.

We thank you for your interest in the Bureau of Land Management programs.



Barbara J
Brown/WO/BLM/DOI
07/31/2007 04:19 PM

To "Paul Orfanedes" <POrfanedes@JudicialWatch.org>
cc
bcc
Subject Fw: Freedom of Information Act Request No. 2007-37

Good Afternoon Mr. Orfanedes -

Just an update on your FOIA request. As I explained to you in my email dated July 10, 2007, we are very short staff. Unfortunately, a "hot" issue from our front office came up that required our office to work on and respond to ASAP. Your FOIA request is near completion and I hope to have it to the Solicitor's office by Friday, August 3rd.

Again, we regret the delay in responding to you and appreciate your consideration regarding this matter. I will contact you again on Friday with an update.

Thank you!

*********************************
Barbara J. Brown
Management Analyst (FOIA)
Division of IRM Governance, WO-560
(202) 452-0314, x3314 - Office
(202) 452-5002 - Fax
*********************************

Forwarded by Barbara J Brown/WO/BLM/DOI on 07/31/2007 04:19 PM ----

WO FOIA@BLM
Sent by: Barbara J Brown

07/10/2007 01:57 PM

To "Paul Orfanedes" <POrfanedes@JudicialWatch.org>
cc
Subject RE: Freedom of Information Act Request No. 2007-37

Good Afternoon -

This email is in response to a voicemail received from Judical Watch on July 9, 2007, regarding the status of FOIA request #2007-37. Your documents are in the final stage of review. Within the next 2 days, the package will go to the Solicitor's office for review/approval before release. We anticipate completion of this process within the next 10 days. Due to a shortage of staff (only 1 individual processing requests), we are now working through a backlog of FOIA requests. We regret the delay in responding to you and appreciate your consideration in this matter.

If you do not hear from us by on or by July 23, 2007, please contact us. Thank you again for your patience and understanding regarding this matter.

"Paul Orfanedes" <POrfanedes@JudicialWatch.org>



"Paul Orfaneces"
<POrfanedesi@JudicialWatc
h.org>
04/24/2007 05:34 PM

To <WO_FOIA@blm.gov>
cc
Subject RE: Freedom of Information Act Request No. 2007-37



Dear Sir/Madam:

Please advise me, at your earliest convenience, about the status of the above-referenced FOIA request.  Thanks.

Paul J. Orfanedes
Judicial Watch, Inc.
(202) 646-5172

-- --Original Message-----
From: WO_FOIA@blm.gov [mailto:WO_FOIA@blm.gov]
Sent: Friday, March 09, 2007 10:32 AM
To  Paul Orfanedes
Subject: Re: Freedom of Information Act Request
Importance: High

Good Morning Mr. Orfanedes -

This email is to acknowledge receipt of your FOIA request sent in an email on March 8, 2007.  We received your email in this office on March 9, 2007.  Your request has been assigned case number FOIA #2007-37.  Please refer to this number for all future inquiries.

We thank you for your interest in the Bureau of Land Management programs.

**WO FOIA@BLM**
Sent by: Barbara J Brown

08/03/2007 03:08 PM

To "Paul Orfanedes" <POrfanedes@JudicialWatch.org>

cc

bcc

Subject RE: Freedom of Information Act Request No. 2007-37

Good Afternoon Mr. Orfanedes -

Just want to update you on your FOIA request. We are very near to completion of review on your FOIA request. We had hoped to have it completed by today, however, unforeseen circumstances happened this week that required immediate action. Your package should be in the Solicitor's Office no later than Tuesday, August 7th.

Please excuse our delay in your response and the unforeseen circumstances regarding your request. Please be assured that your request is being handled as equitably as possible and that all of the documents that can be released will be made to you at the earliest possible date.

Mr. Orfanedes, I will be back in contact with you early next week with an update.

Thank you for your understanding regarding this matter.

Barbara Brown
(202) 452-0314

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) Civil Action No. 1:07CV01570 (RCL) |
| BUREAU OF LAND MANAGEMENT | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DECLARATION OF RICHARD H. BROWN

I, Richard H. Brown, declare the following to be true and correct:

1. I am the Freedom of Information Act ("FOIA") Coordinator for the Nevada State
Office of the Bureau of Land Management ("BLM Nevada headquarters") at the United States
Department of the Interior.[1]  In my capacity as FOIA Coordinator for BLM Nevada headquarters,
I coordinate the processing of, and response to, all FOIA requests pertaining to matters for which
BLM Nevada headquarters may have responsive documents.  I am also responsible for
monitoring the FOIA request responses issued by any of the six field offices and two field
stations that comprise BLM Nevada.

2. On March 9, 2007, the FOIA Coordinator for BLM's Washington, D.C. FOIA Office
assigned me the responsibility to search for documents responsive to Plaintiff's FOIA request,

---

[1]In addition to its Washington, D.C. headquarters, the Bureau of Land Management
maintains offices in a number of States, including the State of Nevada.  The Nevada Bureau of
Land Management consists of the Nevada State Office ("BLM Nevada headquarters"), which is
located in Reno, Nevada, and six field offices, including the Las Vegas Field Office, and two
field stations (collectively, "BLM Nevada").

1

which is the subject of the above-captioned litigation.[2]  Plaintiff's FOIA request sought records

of contacts or communications between BLM and U.S. Senator Harry Reid, U.S. Senator John

Ensign, and U.S. Representative Jim Gibbons and/or their offices or staffs concerning matters

related to the exchange of public land in the Coyote Springs Valley, Clark County, Nevada, for

land owned by Coyote Springs Investment, LLC.  A true and correct copy of Plaintiff's request is

attached.

3. Given the scope and subject matter of the request, I determined that, of the offices and

divisions that comprise BLM Nevada headquarters, the Division of Natural Resources, Lands and

Planning would be the office most likely to contain records responsive to Plaintiff's request

because the Division of Natural Resources, Lands and Planning was the office in BLM Nevada

headquarters that worked on the Coyote Springs public land exchange.  Within the Division of

Natural Resources, Lands and Planning, I identified James Stobaugh, the Lands Team Lead, as

the individual most likely to have or know where to find documents responsive to Plaintiff's

request because he worked on the Coyote Springs public land exchange.  I contacted Mr.

Stobaugh and directed him to search the hard copy and electronic files maintained by the

Division for any documents responsive to Plaintiff's FOIA request.

4. Thereafter, Mr. Stobaugh contacted me about the results of the search he conducted for

Plaintiff's request.  Mr. Stobaugh conducted a manual search of the hard copy files related to the

Coyote Springs public land exchange that the Division of Natural Resources, Lands and Planning

maintains and also reviewed documents and correspondence saved in electronic files related to

---

[2]On March 12, 2007, BLM Nevada's Las Vegas Field Office received an identical FOIA
request from Plaintiff.

the Coyote Springs public land exchange.  Mr. Stobaugh, however, found no documents responsive to Plaintiff's request.

5. I also directed the Administrative Assistant for the Office of Communications in BLM Nevada headquarters to search for responsive documents in the Controlled Correspondence Log. The Administrative Assistant for the Office of Communications maintains the Controlled Correspondence Log, which consists of a hard copy binder and an electronic database both of which contain incoming correspondence from U.S. Senators, U.S. Representatives, and their constituents and outgoing responses from BLM Nevada staff.

6. Shortly after initiating this search, the Administrative Assistant for the Office of Communications informed me that, after both manually reviewing the correspondence in the hard copy binder and conducting a search of the electronic database, both of which comprise the Controlled Correspondence Log, she did not find any documents responsive to Plaintiff's request.

7. In addition, I contacted the FOIA Coordinator for the Las Vegas Field Office and asked that she conduct a search in the Las Vegas Field Office for documents responsive to Plaintiff's request.  Under BLM Nevada State Office policy, when the BLM Nevada State Office FOIA Coordinator determines that a field office may reasonably be expected to possess documents responsive to a FOIA request, the FOIA Coordinator for BLM Nevada headquarters coordinates the search for responsive documents through the field office's FOIA coordinator.

8. The Las Vegas Field Office FOIA Coordinator determined that, of the offices and divisions that comprise the Las Vegas Field Office, the Division of Lands would be the office most likely to contain documents responsive to Plaintiff's request because that Division was the

3

office in the Las Vegas Field Office that worked on the Coyote Springs public land exchange.

The Las Vegas Field Office FOIA Coordinator directed the employees in the Division of Lands

to search their hard copy and electronic files for responsive documents. The Las Vegas Field

Office FOIA Coordinator informed me, however, that the search that the Division of Lands

employees conducted yielded no documents that were responsive to Plaintiff's FOIA request.

9. In addition to directing the searches described above, I personally searched my hard

copy and electronic files, which included my files on prior FOIA requests that sought similar

records. I did not, however, locate any responsive documents.

10. Shortly thereafter, I contacted the Washington, D.C. FOIA Office and informed the

FOIA Coordinator that the search I conducted on behalf of BLM Nevada yielded no documents

responsive to Plaintiff's request.

11. On May 7, 2007, the FOIA Coordinator for the Las Vegas Field Office faxed me a

letter from Plaintiff addressed to the Las Vegas Field Office. The letter requested an update

regarding the status of Plaintiff's FOIA request. I contacted the Las Vegas Field Office FOIA

Coordinator and informed her that I would respond to Plaintiff's request for a status update.

12. On May 8, 2007, I contacted the FOIA Coordinator for BLM's Washington, D.C.

FOIA Office to inquire about the status of Plaintiff's request. The FOIA Coordinator for BLM's

Washington, D.C. FOIA Office informed me that BLM's Washington, D.C. FOIA Office was

still processing Plaintiff's request.

13. On May 14, 2007, in response to Plaintiff's May 7, 2007 letter regarding the status of

Plaintiff's FOIA request, I contacted Plaintiff's counsel, Paul Orfanedes, via telephone. An

employee of Plaintiff informed me that Mr. Orfanedes was unavailable at that time to take my

telephone call. I left a message on Mr. Orfanedes' voicemail, informing him that the Washington, D.C. FOIA Office would send a consolidated response to Plaintiff's FOIA request on behalf of all the BLM Offices.

14. In an effort to avoid litigating this matter in court, I executed a declaration setting forth the details of the search I conducted on behalf of the BLM Nevada. It is my understanding that the declaration was provided to Plaintiff's counsel who expressed the following concerns: (1) that my declaration failed to specify which databases were searched and what search terms were applied to the search; and (2) that the Division of Land Sales and Acquisitions in the Las Vegas Field Office was not searched.

15. To address Mr. Orfanedes' concern regarding the earlier search of electronic databases conducted in the Nevada State Office, I obtained electronic copies of the Coyote Springs-related documents in the possession of James Stobaugh, the Lands Team Lead in the Division of Natural Resources, Lands and Planning, including text files of e-mails in his Coyote Springs folder. Thereafter, I searched Mr. Stobaugh's electronic files related to Coyote Springs, utilizing the following key search terms: "Coyote Springs," "Reid," "Ensign," "Gibbons," and "Patent 27-2005-0081." I also opened and visually scanned through each document but did not find any documents responsive to the request. In addition, Mr. Stobaugh conducted a second search of his electronic calendar using the specified search terms set forth in paragraph 18 below, but he informed me that he did not find any documents responsive to Plaintiff's request.

16. I also obtained an electronic copy of the Controlled Correspondence Log maintained by the BLM Nevada Office of Communications. The Controlled Correspondence Log, as discussed in paragraph 5 above, contains scanned images of all incoming correspondence, as well

as electronic versions of the BLM Nevada's drafts and final responses to incoming correspondence. Thereafter, I searched the Controlled Correspondence Log, utilizing the following key search terms: "Coyote Springs," "Reid," "Ensign," "Gibbons," and "Patent 27-2005-0081." I also made an electronic copy of the documents referenced in the Controlled Correspondence Log, which I reviewed by opening and scanning each document. My electronic search of the Controlled Correspondence Log and my review of all of the documents referenced therein confirmed Ms. Thompson's initial determination, as described in paragraph 5 above, that the Controlled Correspondence Log did not contain any documents responsive to Plaintiff's request.

17. I also conducted a confirmatory search of my own electronic files using as search terms the words "Coyote Springs," "Reid," "Ensign," "Gibbons," and "Patent 27-2005-0081." As with my prior search, I did not find any documents responsive to Plaintiff's request.

18. Finally, to address Mr. Orfanedes' concern that the records of the Division of Land Sales and Acquisition in the Las Vegas Field Office had not been searched, I contacted Philip Rhinehart, Supervisory Realty Specialist in the Land Division of the Las Vegas Field Office. I directed Mr. Rhinehart to coordinate a search of the Division of Land Sales and Acquisitions using the following search instructions:

> Pursuant to the attached FOIA request, please search your paper and electronic materials for documents concerning or reflecting communications or contacts between the BLM and the offices of U.S. Senator Harry Reid, U.S. Senator John Ensign, and/or U.S. Representative Jim Gibbons concerning the Coyote Springs Valley land exchange proposal, Coyote Springs Investment, LLC, and/or Patent # 27-2005-0081. You must complete your search for responsive documents by noon Wednesday, December 5, 2007.
>
> With respect to your paper materials, please be sure to search general office files, personal office files, correspondence files, as well as calendars, meeting logs and

6

notes, travel logs, telephone logs, and any other materials that might contain documents responsive to this FOIA request.  With respect to your electronic materials, including e-mail, databases, word-processing documents, calendars, and spreadsheets, please be sure to search for documents responsive to this request using the following search terms: "Coyote Springs," "Reid," "Ensign," "Gibbons," and "Patent 27-2005-0081."

19.  Mr. Rhinehart informed me that he forwarded the search parameters to the following staff in the Division of Land Sales and Acquisition and staff in the Division of Lands because he was aware that they worked on land exchange and land sale issues:

- Anna Wharton, Field Officer Leadership Team
- Libby White, Realty Specialist (SNPLMA)
- Jane Miller, Realty Specialist
- Cheryl Cote, Realty Specialist
- Mark Chandler, Realty Specialist
- Michelle Leiber, Lead Community Specialist
- Frederic Marcell, Realty Specialist
- Shawna Woods, Realty Specialist
- Jeremy Brooks, SNPLMA Contractor
- Manuela Johnson, Realty Specialist
- Kimberly Liebhauser, Supervisory Realty Specialist
- Steve Tyron, Assistant Field Manager - SNPLMA

According to Mr. Rhinehart, these individuals searched their hard copy and electronic files according to the search instructions set forth in paragraph 18, but did not locate documents responsive to Plaintiff's FOIA request.

20.  In addition to initiating searches in the Division of Land Sales and Acquisition and the Division of Lands, Mr. Rhinehart identified other staff in the Las Vegas Field Office who either had long tenures in the office and thus might have institutional knowledge about the subject of Plaintiff's FOIA request or who might have been consulted on matters involving the Coyote Springs land exchange because of their work area expertise.  Accordingly, he forwarded

the search instructions set forth in paragraph 18 to the following individuals:

- Juan Palma, Field Manager of the Las Vegas Field Office
- Angie Lara, Associate Field Manager of the Las Vegas Field Office
- Olivia Sierra, Executive Secretary of the Las Vegas Field Office
- Robert Taylor, Assistant Field Manager-Sloan Wilderness/Rock National Conservation Area
- Ronnie Hawkins, Appraiser
- Susan Schagere, Appraiser
- Brenda Warner, Realty Specialist
- Hillerie Patton, Public Affairs Officer
- Susanne Rowe, Archaeologist
- Gayle Mars-Smith, Conservation TA Project Manager
- Carolyn Ronning, Multiple Species Habitat Coordinator Project

According to Mr. Rhinehart, these individuals searched their hard copy and electronic files according to the search instructions set forth in paragraph 18, but did not locate documents responsive to Plaintiff's FOIA request. Mr. Rhinehart also informed me that he searched his own electronic and paper files pursuant to the search parameters he had distributed to others but did not find any documents responsive to the request.

21. In addition, Mr. Rhinehart personally searched the Las Vegas Field Office's Central Files' "Exchanges of Public Land" 2200 file series. This is a filing system that tracks hard copies of all outgoing correspondence and memoranda generated in the office and some inbound correspondence involving public land exchanges. According to Mr. Rhinehart, his manual search of the Central Files did not produce any documents responsive to Plaintiff's FOIA request.

22. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

8

is true and correct.

Executed on December  18 , 2007

_____
RICHARD H. BROWN



"Paul Orfanedes"
&lt;POrfanedes @JudicialWatch
.org&gt;

03/08/2007 12:55 PM

To  &lt;wo_foia@blm.gov&gt;

cc

bcc

Subject  Freedom of Information Act Request

**VIA E-MAIL (wo_foia@blm.gov)**

March 8, 2007March 8, 2007

BUREAU OF LAND MANAGEMENT
1489 C Street, N.W.
Washington, DC  20240

     Re:    **Freedom of Information Act Request**

Dear Sir/Madam:

     Judicial Watch, Inc. hereby requests that the Bureau of Land Management ("BLM")
produce any and all agency records concerning or relating to the following subject matters
pursuant to the provisions of the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"):

     **(1)**    Contacts or communications between the Bureau of Land Management
and any of the following individuals and/or their offices or staffs concerning or
relating to any proposal to exchange public land in the Coyote Springs Valley,
Clark County, Nevada, for land owned by Coyote Springs Investment, LLC:

          a.    U.S. Senator Harry Reid;
          b.    **U.S. Senator John Ensign**; or
          c.    U.S. Rep. Jim Gibbons.

     **(2)**    Contacts or communications between the Bureau of Land Management
and any of the following individuals and/or their offices or staffs concerning or
relating to the 2004 or 2005 agreement to exchange public land in the Coyote
Springs Valley, Clark County, Nevada, for land owned by Coyote Springs
Investment, LLC:

          a.    U.S. Senator Harry Reid;
          b.    **U.S. Senator John Ensign**; or
          c.    U.S. Rep. Jim Gibbons.

     **(3)**    Contacts or communications between the Bureau of Land Management
and any of the following individuals and/or their offices or staffs concerning or
relating to the February 18, 2005 issuance of Patent No. 27-2005-0081 to Coyote

*Received 3/9/07*

*2007-37*

Springs Investment, LLC:

                a.     U.S. Senator Harry Reid;

                b.     U.S. Senator John Ensign; or

                c.     U.S. Rep. Jim Gibbons.

Judicial Watch, Inc. also hereby requests a waiver of both search and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 5 U.S.C. § 552(a)(4)(A)(iii).

Judicial Watch, Inc. is entitled to a waiver of search fees as a member of the media under 5 U.S.C. § 552(a)(4)(A)(ii)(II). Judicial Watch regularly obtains information about the operations and activities of government through FOIA and other means, uses its editorial skills to turn this information into distinct works, and publishes and disseminates these works to the public through its Internet site, www.JudicialWatch.org and its monthly newsletter, among other means. Judicial Watch, Inc. intends to do likewise with the records it receives in response to this particular request. Judicial Watch, Inc. has been recognized as a member of the news media by the various federal agencies on numerous occasions.

Judicial Watch, Inc. also is entitled to a waiver of both search fees and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). The development of the Coyote Springs Valley is a matter of significant public interest and has generated both media scrutiny and at least one lawsuit. *See* , *e.g.* , "Desert Connections," *Los Angeles Times* , August 20, 2006; *see also  Western Lands Project, et al. v. U.S. Bureau of Land Management, et al.* , Case No. 03:06-CV-00475-BES-VPC (D. Nevada). In addition, as a not-for-profit educational organization that seeks to promote integrity, transparency, and accountability in politics, government, and the law, Judicial Watch, Inc. does not seek to obtain these records for any commercial interest, but instead seeks them in furtherance of its educational, public interest mission.

You have 20 days from receipt of this request, excepting Saturdays, Sundays, and legal holidays, to determine whether to comply with the request and immediately notify us of your determination, the reasons therefor, and the right to appeal any adverse determination. 5 U.S.C. § 552(a)(6)(A).

If you do not understand this request or any portion thereof, or if you feel you require clarification of this request or any portion thereof, please contact us immediately at 202-646-5172.

Sincerely,

Paul J. Orfanedes
Judicial Watch, Inc.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
JUDICIAL WATCH, INC.              )
                                         )
                Plaintiff,     )
                                         )
        v.                    )
                                         )  Civil Action No. 1:07CV01570 (RCL)
BUREAU OF LAND MANAGEMENT    )
                                         )
                Defendant.    )
_____)

**PROPOSED ORDER**

Upon consideration of Plaintiffs' Verified Motion for an Award of Attorneys' Fees and

Litigation Expenses, the opposition thereto, and the record in this case, it is hereby

ORDERED that Plaintiffs' Motion is DENIED.


SO ORDERED.

Dated:_____          _____
                                             UNITED STATES DISTRICT JUDGE

**NAMES OF PERSONS TO BE SERVED WITH PROPOSED ORDER UPON ENTRY**

Pursuant to Local Civil Rule of Procedure 7(k), listed below are the names and addresses of all of the attorneys entitled to be notified of the proposed order's entry.


Paul J. Orfanedes, Esq.
James F. Peterson, Esq.
Judicial Watch, Inc.
501 School Street, S.W.
Suite 500
Washington, D.C.  20024

Attorneys for Plaintiff


Tamra T. Moore, Esq.
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 6134
Washington, D.C.  20530

Attorney for Defendant